UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

OREGON MUTUAL INSURANCE
COMPANY,

              Plaintiff,

    v.

SEATTLE COLLISION CENTER,
INC., et al.,

              Defendants.

_____

SEATTLE COLLISION CENTER,
INC., et al.,

              Third-Party Plaintiffs,

    v.

AMERICAN STATES INSURANCE
COMPANY, et al.,

              Third-Party Defendants.

_____

CASE NO. C08-1670JLR

ORDER

This matter comes before the court on Third-Party Defendants American States Insurance Company and Safeco Insurance Company of America's (collectively, "Insurers") motion for summary judgment (Dkt. # 33). Having reviewed the motion, as well as all papers filed in support and opposition, and deeming oral argument unnecessary, the court GRANTS in part and DENIES in part the motion for summary judgment (Dkt. # 33).

## I.  BACKGROUND

Defendant and Third-Party Plaintiff Seattle Collision Center, Inc. ("Seattle Collision") owns and operates an auto repair and painting business on property located at 1752 Rainier Avenue South ("SCC Property") in Seattle, Washington.  (Am. Compl. (Dkt. # 22) ¶¶ 3.1-3.3; Answer to Am. Compl. & Third-Party Compl. ("2d Third-Pty. Compl.") (Dkt. # 25) ¶ 13.1.)  Defendants and Third-Party Plaintiffs Todd M. Sullivan and Karen Sullivan (collectively, "the Sullivans") are the principals and owners of Seattle Collision.  (2d Third-Pty. Compl. ¶ 10.2.)  The neighboring property located at 1750 22nd Avenue South ("Belshaw Property") in Seattle, Washington, is owned and/or leased by Enodis Corporation ("Enodis") and/or Belshaw Brothers, Inc. ("Belshaw") (collectively, "Underlying Plaintiffs").  American States and Safeco insured Seattle Collision from March 27, 1998, to June 2, 2005.

On June 24, 2004, Underlying Plaintiffs notified Seattle Collision and the Sullivans that they were potentially liable for remediation costs under Washington's Model Toxic Control Act ("MTCA"), RCW § 70.105D, *et seq.*  (Declaration of

Kimberly Chong ("Chong Decl.") (Dkt. # 34), Ex. H.)  In the letter, Underlying

Plaintiffs demanded that Seattle Collision and the Sullivans investigate and remediate

contamination of soils and groundwater on the Belshaw Property caused by the alleged

release of volatile organic compounds, specifically tetrachloroethene, also known as

perchloroethylene ("perc")[1], from the SCC Property.  (*Id*.); *see also Westfarm Assoc.*

*Ltd. P'ship v. Wash. Suburban Sanitary Comm'n*, 66 F.3d 669, 673 (4th Cir. 1995).

Seattle Collision notified the Insurers of the Underlying Plaintiffs' letter.  (Chong

Decl., Ex. G.)  The Insurers received the notice on July 7, 2004, and Kimberly Chong, a

claims representative for the Insurers, discussed the claim with Mr. Sullivan on the same

day.  (Declaration of Barbara L. Bollero ("Bollero Decl.") (Dkt. # 40-2), Ex. A

(Excerpts of the Deposition of Kimberly Chong ("Chong Dep.")) at 144; *see* Chong

Decl. ¶ 6 & Ex. I.)  In their conversation, Mr. Sullivan told Ms. Chong that he did not

use pollutants in his business operations.  (Chong Decl. ¶ 6 & Ex. I.)  He further

explained other reasons why he believed Seattle Collision was not responsible for the

contamination, including that Seattle Collision used only one gallon of aerosol degreaser

per month and had a solid four-inch concrete slab floor, that the prior owner operated a

dry cleaning business that would have used pollutants, and that there were

manufacturing operations on the Belshaw Property.  (Chong Decl., Ex. I.)  At the end of

the conversation, Ms. Chong advised Mr. Sullivan that the insurance policies excluded

---

[1]  Underlying Plaintiffs initially refer to tetrachloroethene in their June 24, 2004 letter, but subsequently refer to perc in their 2007 lawsuit, as discussed below.  For purposes of this order, the court will refer to the pollutant at issue as perc.

coverage for pollution claims and informed him that she would be sending a coverage declination letter.  (Chong Decl. ¶ 6 & Ex. I.)  On July 21, 2004, the Insurers formally notified Seattle Collision that the insurance policies did not cover the claim.  (Chong Decl., ¶ 7 & Ex. J.)  In the declination letter, Ms. Chong cited both versions of the pollution exclusion clauses contained in the insurance policies as the basis for the denial of coverage.  (Chong Decl., Ex. J.)

On October 19, 2007, Underlying Plaintiffs filed suit against Seattle Collision and the Sullivans, among others, in the Superior Court for King County, Washington, in *Enodis Corp. v. Seattle Collision Center, Inc.*, Case No. 07-2-33766-1KNT ("Underlying Lawsuit").  (Am. Compl., Ex. 1 (Underlying Compl.).)  In their complaint ("Underlying Complaint"), Underlying Plaintiffs seek past and future remedial action costs for alleged contamination of soils and groundwater caused by the release of volatile organic compounds, specifically perc and its degradation compounds, from the SCC Property to the Belshaw Property.  (Underlying Compl. ¶¶ 10-19.)  Underlying Plaintiffs assert two causes of action.  First, under the MTCA, Underlying Plaintiffs allege that Seattle Collision and the Sullivans are "strictly liable, jointly and severally, for all 'remedial action' costs, within the meaning of RCW 70.105D.020(21), incurred by [Underlying Plaintiffs] arising from the releases or threatened releases of these hazardous substances."  (Underlying Compl. ¶ 28.)  Second, under the MTCA and Washington's Declaratory Judgment Act, RCW 7.24.010 et seq., Underlying Plaintiffs

request a declaratory judgment that Seattle Collision and the Sullivans are responsible for and shall pay all future remedial action costs.  (*Id.* ¶ 33.)

On December 8, 2007, Seattle Collision and the Sullivans tendered the Underlying Lawsuit to the Insurers.  (Chong Decl., Ex. K.)  On December 14, 2007, Ms. Chong acknowledged receipt of the tender, noted that the Insurers had previously declined coverage, provided Seattle Collision and the Sullivans with copies of the insurance policies, and indicated that the Insurers would reply by separate letter after reviewing the Underlying Lawsuit for potential coverage.  (*Id.*)  On February 11, 2008, the Insurers denied coverage for the reasons previously stated in the July 21, 2004 declination letter.  (Chong Decl., Ex. M.)

After receiving the second declination letter, Seattle Collision and the Sullivans wrote to the Insurers in greater depth about their legal position regarding coverage.  (Chong Decl., Ex. N.)  Seattle Collision and the Sullivans explained their belief that the Insurers had wrongfully denied coverage and advised the Insurers that, absent reconsideration of the denial, Seattle Collision and the Sullivans would bring suit against the Insurers.  (*Id.*)  The Insurers confirmed their denial.  (Chong Decl., Ex. O.)

On November 17, 2008, Plaintiff Oregon Mutual Insurance Company ("Oregon Mutual"), another insurer of Seattle Collision, brought suit in this court against Seattle Collision and the Sullivans for a declaratory judgment that it was not obligated to defend

or indemnify Seattle Collision and the Sullivans in the Underlying Lawsuit.[2]  (Compl.

(Dkt. # 1) ¶¶ 6.1-6.12.)  Seattle Collision and the Sullivans answered the complaint and

filed a third-party complaint against the Insurers.  (*See* Third-Pty Compl. (Dkt. # 10).)

They subsequently filed an amended answer and third-party complaint.  (*See* 2d Third-

Pty. Compl. (Dkt. # 25).)  In their amended third-party complaint, Seattle Collision and

the Sullivans allege causes of actions against the Insurers for "breach of contract,

negligence, breach of the obligation of good faith and fair dealing, consumer protection

act violations, insurance fair conduct act violations, declaratory relief and monetary

damages."  (2d Third-Pty. Compl. § X.)

On April 16, 2009, the Insurers filed the instant motion for summary judgment

(Dkt. # 33).  The Insurers request that the court confirm that the insurance policies do

not provide coverage for the claims alleged by Underlying Plaintiffs, that the Insurer's

denial of coverage was proper, and that Seattle Collision and the Sullivans's various bad

faith claims do not withstand summary judgment because the Insurers acted reasonably.

## II.    ANALYSIS

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is

appropriate if the evidence, when viewed in the light most favorable to the non-moving

party, demonstrates that there is no genuine issue of material fact.  Fed. R. Civ. P. 56(c);

*see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. County of Los Angeles*,

---

[2] Oregon Mutual, Seattle Collision, and the Sullivans have stipulated to the dismissal of all of the claims between them.  (*See* Dkt. ## 65-66.)

477 F.3d 652, 658 (9th Cir. 2007).  "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of showing there is no material factual dispute and that he or she is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at 323.  If the moving party meets this burden, the nonmoving party must present affirmative evidence to demonstrate specific facts showing that there is a genuine issue for trial.  *Galen*, 477 F.3d at 657.

**A.      Interpretation and Construction of Insurance Policies**

In Washington, insurance policies are construed as contracts.  *Quadrant Corp. v. Am. States Ins. Co.*, 110 P.3d 733, 737 (Wash. 2005).  Determining whether coverage exists is a two-step process:  "The insured must show the loss falls within the scope of the policy's insured losses. To avoid coverage, the insurer must then show the loss is excluded by specific policy language."  *McDonald v. State Farm Fire & Cas. Co.*, 837 P.2d 1000, 1003-04 (Wash. 1992).  Courts must consider the policy as a whole and give it a "'fair, reasonable, and sensible construction as would be given to the contract by the average person purchasing insurance.'"  *Quadrant*, 110 P.3d at 737 (quoting *Weyerhaeuser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 122 (Wash. 2000)).  If the language of an insurance policy is clear and unambiguous, courts must enforce it as written; courts may not modify it or create ambiguity where none exists.  *Quadrant*, 110 P.3d at 737.

A clause in an insurance policy will be deemed ambiguous only "when, on its face, it is fairly susceptible to two different interpretations, both of which are reasonable." *Am. Nat. Fire Ins. Co. v. B & L Trucking & Const. Co., Inc.*, 951 P.2d 250, 256 (Wash. 1998). Courts look to extrinsic evidence regarding the intent of the parties to resolve ambiguity. *Quadrant*, 110 P.3d at 737. "Any ambiguity remaining after examination of the applicable extrinsic evidence is resolved against the insurer and in favor of the insured." *Id.* The expectations of the insured cannot override the plain language of the insurance policy. *Id.*

Policy coverage exclusions run contrary to the fundamental purpose of insurance and courts will not extend them beyond their clear and unequivocal language. *City of Bremerton v. Harbor Ins. Co.*, 963 P.2d 194, 196 (Wash. Ct. App. 1998). Exclusions are strictly construed against the insurer. *Quadrant*, 110 P.3d at 737; *Bremerton*, 963 P.2d at 196. Nevertheless, "a strict application should not trump the plain, clear language of an exclusion such that a strained or forced construction results." *Quadrant*, 110 P.3d at 737.

**B.      Does the Loss Fall Within the Scope of the Policies' Insured Losses?**

For present purposes, the Insurers do not dispute that that the claims alleged by Underlying Plaintiffs fall within the general scope of the policies' insured losses. (Mot. at 14.) Instead, the Insurers challenge the second step of the two-step process for determining coverage, *i.e.*, does specific policy language exclude the loss? (*Id.*) Here,

the court assumes, without deciding, that the loss at issue in the Underlying Lawsuit falls within the scope of the policies.

**C.      Does Specific Policy Language Exclude the Loss?**

The Insurers argue that the language of the insurance policies specifically excludes coverage for losses caused by pollution, and thus that they properly denied coverage.  (Mot. at 2.)  In support of this argument, the Insurers point to pollution exclusion clauses contained in all seven of the insurance policies.  These exclusions fall into two distinct categories.  On the one hand, Safeco Policy BA8484344[3] and American States Policies 01-CE-902048-1, 01-CE902048-2, and 01-CE-902048-3 include so-called absolute pollution exclusion clauses.  On the other hand, American States Policies 01-CE-902048-4 and 01-CG-501146-1 include modified absolute pollution exclusion clauses.  The Insurers contend that all of the exclusions, regardless of language, function to exclude coverage because Underlying Plaintiffs allege claims arising out of traditional environmental harm.

1.    Pollutants

The insurance policies define the term "pollutants" to mean "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acid,

---

[3]  The insurance coverage for March 27, 1999, to March 27, 2000, is a renewal of Safeco Policy BA8484344.  (*See* Reply at 3.)

alkalis, chemicals and waste."[4]  (*See, e.g.,* Third Declaration of Thomas J. Braun ("3d Braun Decl.") (Dkt. # 59), Ex. A at 24, § VI.K.)  Underlying Plaintiffs allege that Seattle Collision and the Sullivans are liable for remedial costs associated with the release of "hazardous substances," including volatile organic compounds, specifically perc and its degradation compounds.  (*See* Underlying Compl. ¶¶ 28, 33.)  Seattle Collision and the Sullivans do not dispute that perc constitutes a pollutant under the policies.  Indeed, they submit the chemical fact sheet for perc prepared by the Office of Pollution Prevention and Toxics for the United States Environmental Protection Agency, which describes the range of deleterious health effects caused by exposure to perc.  (*See* Bollero Decl., Ex. B.)  The court finds that perc is a pollutant under the policies.

2.   Absolute Pollution Exclusion Clauses:  Safeco Policy BA8484344 and American States Policies 01-CE-902048-1, 01-CE902048-2, and 01-CE-902048-3

Pollution exclusion clauses "originated from insurers' efforts to avoid sweeping liability for long-term release of hazardous waste."  *Quadrant*, 110 P.3d at 737.  Since the promulgation of the standard absolute pollution exclusion in the mid-1980s, Washington courts have addressed the applicability of the exclusion both in the context of traditional environmental harms and with respect to "incidents that did not involve so-called classic environmental pollution."  *Id*. at 737-741; *see Kent Farms, Inc. v. Zurich Ins. Co.*, 998 P.2d 292, 295 (Wash. 2000); *Cook v. Evanson*, 920 P.2d 1223, 1226

---

[4]   American States Policies 01-CE-902048-1 and 01-CG-501146-1 refer to "acids" rather than "acid."

(Wash. Ct. App. 1996).  The law in Washington is well-settled that, at a minimum, the absolute pollution exclusion bars coverage when the underlying claim arises from a pollutant acting "as a pollutant."  *Kent Farms*, 998 P.2d at 295; *see Quadrant*, 110 P.3d at 742.

Safeco Policy BA8484344 and American States Policies 01-CE-902048-1, 01-CE902048-2, and 01-CE-902048-3 include absolute pollution exclusion clauses.  The exclusions contained in these policies provide:

B.  Exclusions

This insurance does not apply to any of the following:

.   .   .

8.  Pollution Exclusion Applicable to "Garage Operations" – Other Than Covered "Autos"

"Bodily injury", "property damage" or loss, cost or expense arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

a.  At or from any premises, site or location that is or was at any time owned or occupied by, or rented or loaned to, any "insured[.]"

.   .   .

Loss, cost or expense means those resulting from any:

(1)  Request, demand or order that the "insured" or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants";

(2)  Claim or "suit" by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing,

> containing, treating, detoxifying or neutralizing, or in any way responding to or assessing the effects of "pollutants".

(*E.g.*, 3d Braun Decl., Ex. A at 14, § II.B.)

The language of the absolute pollution exclusion clauses clearly and unambiguously precludes coverage. Underlying Plaintiffs raise claims under the MTCA and seek payment from Seattle Collision and the Sullivans for past and future remedial action costs arising from the alleged release of perc. These claims fall squarely within the scope of the exclusion. Underlying Plaintiffs allege property damage or other loss, cost, or expense arising out of the actual or alleged "discharge, dispersal, seepage, migration, release or escape of" perc or other hazardous materials. Underlying Plaintiffs seek to recover for traditional environmental harms arising from a pollutant acting as a pollutant. Although courts must strictly construe exclusions against the insurer, the Washington Supreme Court also teaches that courts must not limit the scope of the exclusion where its language is subject to only one reasonable interpretation. *Quadrant*, 110 P.3d at 743. Here, the absolute pollution exclusions give rise to only one reasonable conclusion: the absolute pollution exclusions bar coverage on these facts. *See Kent Farms*, 998 P.2d at 296 ("[T]he pollution exclusion clause was designed to exclude coverage for traditional environmental harms."). Seattle Collision and the Sullivans do not argue otherwise. Therefore, the court concludes that the Insurers have met their burden in establishing that the absolute pollution exclusion clauses contained in Safeco

Policy BA8484344 and American States Policies 01-CE-902048-1, 01-CE902048-2, and 01-CE-902048-3 exclude liability for the losses alleged by Underlying Plaintiffs.

      3.   <u>Modified Absolute Pollution Exclusion Clauses</u>:  American States Policies 01-CE-902048-4 and 01-CG-501146-1

The final two policies, American States Policies 01-CE-902048-4 and 01-CG-501146-1[5], include a modified version of the absolute pollution exclusion.[6] The modified absolute pollution exclusion divides the exclusion into two paragraphs—paragraph f.(1), which covers bodily injury or property damage, and paragraph f.(2), which covers loss, cost or expense—and adds an exception to the second paragraph. Seattle Collision and the Sullivans argue that the exception applies to both paragraphs and thereby restores coverage with respect to non-remediation claims. (Resp. at 14-21.) The Insurers reply that the exception applies only to paragraph f.(2) and that paragraph f.(1) operates independently to exclude coverage for all claims. (Reply at 3-9.) The modified absolute pollution exclusion provides as follows:

---

[5] The language of the modified absolute pollution exclusion clauses in American States Policies 01-CE-902048-4 and 01-CG-501146-1 is not identical, although it is materially similar. For purposes of this order, the court will refer to the language of American States Policy 01-CG-501146-1. To the extent the policies differ, the court determines that the differences do not affect the court's analysis.

[6] Only a small number of courts—and no courts applying Washington law—have interpreted language similar to that of the modified absolute pollution exclusion clauses. *See Hussey Copper, Ltd. v. Royal Ins. Co. of Am.*, 567 F. Supp. 2d 774 (W.D. Pa. 2008); *Mid-Continent Cas. Co. v. Third Coast Packaging Co., Inc.*, 342 F. Supp. 2d 626 (S.D. Tx. 2004); *Whittier Props., Inc. v. Alaska Nat'l Ins. Co.*, 185 P.3d 84 (Alaska 2008); *Clean Harbors Envtl. Serv., Inc. v. Boston Basement Techs., Inc.*, No. 1075, 2008 WL 534536 (Mass. App. Ct. Feb. 26, 2008). The parties analyze these cases in depth. As discussed below, however, the court determines that resolution of the instant motion does not require the court to address this case law.

2. Exclusions

This insurance does not apply to:

.   .   .

f. Pollution

(1)  "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

(a)  At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.

.   .   .

(2)  Any loss, cost or expense arising out of any:

(a)  Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of, "pollutants"; or

(b)  Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

(*E.g.*, 3d Braun Decl., Ex. G at 28-29, § I.2.f.)

Here, the parties agree that the policies do not provide coverage for the remediation claims alleged by Underlying Plaintiffs. Notably, Seattle Collision and the Sullivans's argument that the exception to paragraph f.(2) restores coverage necessarily

concedes that the modified absolute pollution exclusion clauses bar coverage for remediation claims. (*See* Resp. at 17.) Additionally, Seattle Collision and the Sullivans do not argue that the policies offer coverage for remediation claims. The court finds that the modified absolute pollution exclusion clauses of American States Policies 01-CE-902048-4 and 01-CG-501146-1 clearly and unambiguously exclude coverage for the remediation claims alleged by Underlying Plaintiffs.

Having conceded that the policies do not cover remediation costs, Seattle Collision and the Sullivans argue instead that Underlying Plaintiffs allege non-remediation claims that fall within the scope of the insurance policies and thereby trigger the duty to defend. A complaint must be construed liberally to determine whether it alleges facts that, if proven, could impose liability on the insured within the scope of the insurance policy. *See Truck Ins. Exch. v. Vanport Homes, Inc.*, 58 P.3d 276, 281-82 (Wash. 2002). Seattle Collision and the Sullivans read the Underlying Complaint to include not only claims for past and future remedial action costs but also a claim for natural resource damages.[7] (Resp. at 16-21.) Seattle Collision and the Sullivans characterize this hypothetical claim as a type of "property damage" claim within the meaning of the policies. (Resp. at 17, 21.) The court is not persuaded that the Underlying Complaint, even construed liberally, alleges a claim for natural resource

---

[7] Seattle Collision and the Sullivans further suggest that Underlying Plaintiffs could have brought claims for negligent or intentional trespass. (Resp. at 17.) Having reviewed the Underlying Complaint, the court finds that it plainly does not allege trespass claims. The court declines to consider whether American States Policies 01-CE-902048-4 and 01-CG-501146-1 provide coverage for liability based on trespass claims.

damages or other, non-remediation claims. Nevertheless, the court need not resolve this issue because, even accepting Seattle Collision and the Sullivans's characterization of the Underlying Complaint, the modified absolute pollution exclusion clauses exclude coverage for any such non-remediation claims.

In determining whether the policies provide coverage for these non-remediation claims, the court first addresses the relationship between paragraph f.(1) and the exception to paragraph f.(2). Seattle Collision and the Sullivans argue that the exclusion applies to both paragraphs of the modified absolute pollution exclusion clauses. (Resp. at 15.) The court disagrees. Although the exception's reference to "this paragraph" appears ambiguous when read in isolation, the plain language of the policies as a whole clarifies that the exception refers specifically to paragraph f.(2). For example, in the exclusion portion of American States Policy 01-CG-501146-1, the policy refers to headings denoted by letters (a., b., c., etc.) as "exclusions," sub-headings denoted by numbers ((1), (2), (3), etc.) as "paragraphs," and further sub-headings denoted by letters ((a), (b), (c), etc.) as "subparagraphs." (*See, e.g.*, 3d Braun Decl., Ex. G at 30, § I.2.j.) Second, the language of the exception tracks the language of paragraph f.(2), not of paragraph f.(1). Interpreting the policies as a whole and finding the language clear and unambiguous, the court concludes that the exception applies only to paragraph f.(2). *Cf. Whittier*, 185 P.3d at 94. As a consequence, regardless whether the exception to paragraph f.(2) restores coverage, "the coverage remains 'subject to the limitation of each and every exclusion.'" *Id.* (quoting *Stillwater Condo Ass'n v. Am. Home*

*Assurance Co.*, 508 F. Supp. 1075, 1079 (D. Mont. 1981)); *see Weedo v. Stone-E-Brick, Inc.*, 405 A.2d 788, 795 (N.J. 1979). In other words, paragraph f.(1), to the extent it excludes coverage, functions independently of paragraph f.(2).

In light of this construction, the first paragraph of the modified absolute pollution exclusion clauses clearly and unambiguously excludes coverage for all non-remediation, property damage claims. Specifically, paragraph f.(1) excludes coverage for property damage arising out of the actual or alleged release of pollutants. "Property damage" is a defined term under the insurance policies, and the parties agree that a claim for natural resource damages, whether or not actually asserted in the Underlying Complaint, constitutes a claim for "property damage" as characterized by Seattle Collision and the Sullivans. (Resp. at 17, 21; Reply at 11.) Indeed, this is a necessary part of Seattle Collision and the Sullivans's argument that non-remediation "property damage" claims fall within the exception to paragraph f.(2), which only applies to "liability for damages because of '*property damage*' that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement." (3d Braun Decl., Ex. G at 28-29, § I.2.f.) Seattle Collision and the Sullivans do not address the question whether coverage exists under paragraph f.(1) for these property damage claims, relying instead on the contention that the exception to paragraph f.(2) applies to both paragraphs. Having rejected Seattle Collision and the Sullivans's argument that the exception applies to both paragraphs, however, any property damage claim caused by the alleged or actual release of perc, such as the alleged natural resource damages claim,

constitutes the type of traditional environmental harms excluded by the pollution exclusions, as discussed in Part II.C.2. *See Quadrant*, 110 P.3d at 742; *Kent Farms*, 998 P.2d at 296. The court concludes that the modified absolute pollution exclusion clauses contained in American States Policies 01-CE-902048-4 and 01-CG-501146-1 exclude coverage for non-remediation property damage claims.

**D.    Bad Faith Claims**

The Insurers also request that the court grant summary judgment in their favor as to all causes of action predicated on the Insurers' alleged bad faith denial of coverage and wrongful claims handling. (Mot. at 17-19.) Seattle Collision and the Sullivans allege claims for (1) breach of the duty to defend and the duty to indemnify, (2) breach of the obligation of good faith and fair dealing under RCW 48.01.010 and the Washington Administrative Code, (3) violation of Washington's Consumer Protection Act ("CPA"), RCW 19.86 *et seq.*; (4) violation of Washington's Insurance Fair Conduct Act ("IFCA"), RCW 48.30.015; (5) negligence and wrongful conduct; (6) estoppel to deny coverage; (7) declaratory relief; and (8) damages. (Am. Third-Party Compl. ¶¶ 14.1-19.1.) All of these claims stem from Ms. Chong's investigation and the Insurers' subsequent denial of coverage. The Insurers challenge these claims as a group, asserting that the claims fail because reasonable minds could not disagree that the Insurers denied coverage based on reasonable grounds. (Mot. at 17-19.)

1.    <u>Breach of the Duty to Defend and the Duty to Indemnify</u>

"The duty to defend arises at the time an action is first brought, and is based on the potential for liability." *Truck Ins. Exch.*, 58 P.3d at 281; *see Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007). This duty is triggered "'when a complaint against the insured, construed liberally, alleges facts which could, if proven, impose liability upon the insured within the policy's coverage.'" *Truck Ins. Exch.*, 58 P.3d at 281-82 (quoting *Unigard Ins. Co. v. Leven*, 983 P.2d 1155, 1160 (Wash. Ct. App. 1999)). Nonetheless, if the insurance policy clearly does not cover the alleged claim then the insurer is relieved of its duty to defend. *Truck Ins. Exch.*, 58 P.3d at 282. "Once the duty to defend is triggered by a claim that potentially falls within the policy's basic coverage provisions, the insurer is relieved of that duty only if the claim is clearly excluded by an applicable exclusionary clause within the policy." *Am. Best Food, Inc. v. Alea London, Ltd.*, 158 P.3d 119, 124 (Wash. Ct. App. 2007).

Here, for the reasons discussed above, the pollution exclusion clauses clearly exclude coverage for liability on the claims asserted by Underlying Plaintiffs. Even construed liberally, the Underlying Complaint would not impose liability on Seattle Collision and the Sullivans within the scope of the policies' coverage. As a result, the Insurers were relieved of their duty to defend. *Truck Ins. Exch.*, 58 P.3d at 282. Likewise, the Insurers owed no duty to indemnify. *Woo*, 164 P.3d at 459 ("[T]he duty to indemnify exists only if the policy actually covers the insured's liability."). Therefore,

the court grants summary judgment in favor of the Insurers on Seattle Collision and the Sullivans's claim for breach of the duty to defend and the duty to indemnify.

　　2.　　Bad Faith Claims

An insurer owes a duty to act in good faith towards its insured. RCW 48.01.030; *Smith v. Safeco Ins. Co.*, 78 P.3d 1274, 1276 (Wash. 2003). Breach of the duty of good faith may give rise to a tort action for bad faith. *Smith*, 78 P.3d at 1276. To prevail on a bad faith claim, the insured must show that the insurer's breach of the insurance contract was unreasonable, frivolous, or unfounded. *Id*. at 1277. In addition, as with any other tort claims, "the insured must prove duty, breach of duty, and damages proximately caused by any breach of duty." *Werlinger v. Clarendon Nat'l Ins. Co.*, 120 P.3d 593, 595 (Wash. Ct. App. 2005). Whether an insurer acted in bad faith is a question of fact. *Smith*, 78 P.3d at 1277. On a motion for summary judgment, courts review bad faith claims under the following standard:

> If the insured claims that the insurer denied coverage unreasonably in bad faith, then the insured must come forward with evidence that the insurer acted unreasonably. The policyholder has the burden of proof. The insurer is entitled to summary judgment if reasonable minds could not differ that its denial of coverage was based upon reasonable grounds. If, however, reasonable minds could differ that the insurer's conduct was reasonable, or if there are material issues of fact with respect to the reasonableness of the insurer's action, then summary judgment is not appropriate. If the insurer can point to a reasonable basis for its action, this reasonable basis is significant evidence that it did not act in bad faith and may even establish that reasonable minds could not differ that its denial of coverage was justified.

*Id*. at 1277-78 (citations omitted).

### i. Bad Faith Denial of Coverage

Viewing the evidence in the light most favorable to Seattle Collision and the Sullivans, the court concludes that reasonable minds could not differ that the Insurers denied coverage based on reasonable grounds. Specifically, the Insurers denied coverage based on a correct interpretation of the pollution exclusion clauses. (*See* Chong Decl., Exs. J, M.) This all but precludes a finding of bad faith. *Am. Best Food*, 158 P.3d at 128 ("[B]ad faith will not be found where the failure to provide a defense is based upon a reasonable interpretation of the insurance policy."); *Kirk v. Mt. Airy Ins. Co.*, 951 P.2d 1124, 1126 (Wash. 1998). Seattle Collision and the Sullivans rest their arguments to the contrary on the incorrect assertion that the insurance policies provide coverage for liability on the claims alleged by Underlying Plaintiffs. The court grants summary judgment on Seattle Collision and the Sullivans's bad faith claim for denial of coverage.

### ii. Bad Faith Investigation

Viewing the evidence in the light most favorable to Seattle Collision and the Sullivans, the court concludes that reasonable minds could not differ that the Insurers conducted a reasonable investigation. After receiving the original notice, the Insurers arrived at the legal opinion that the pollution exclusion clauses clearly excluded coverage for Underlying Plaintiffs' claims. (*See* Chong Decl., Exs. J, M.) Accordingly, to survive summary judgment, Seattle Collision and the Sullivans must show that,

despite this legal conclusion, further investigation of factual materials would have led to a different understanding or result. *See Am. Best Food*, 158 P.3d at 129.

Seattle Collision and the Sullivans first argue that the Insurers failed to conduct a reasonable investigation because they did not consider the fact that Seattle Collision did not use perc in its operations. (Resp. at 5.) The evidence, viewed in the light most favorable to Seattle Collision and the Sullivans, demonstrates that Mr. Sullivan informed Ms. Chong of this alleged fact during their conversation of July 7, 2004 (Chong Decl., Ex. I), but Ms. Chong did not follow-up to determine the accuracy of Mr. Sullivan's statement or its potential effects on the Underlying Lawsuit (Bollero Decl. ¶ 5). Even assuming Ms. Chong failed to pursue these inquiries, however, Seattle Collision and the Sullivans have not shown that further investigation would have led to a different understanding or result with respect to coverage. The pollution exclusion clauses apply regardless whether Seattle Collision used or did not use perc. Although this fact may be relevant to the defense of the Underlying Lawsuit, it does not weigh on the reasonableness of the Insurers' investigation before denying coverage. Likewise, the Insurers' subsequent decision not to pursue this issue when raised again by Seattle Collision and the Sullivans in 2007, as well as their decision not to follow-up on the alleged innocent owner's defense, does not affect the propriety of the denial. The court finds that Seattle Collision and the Sullivans have not shown that the Insurers failed to conduct a reasonable investigation on this ground.

Seattle Collision and the Sullivans next argue that the Insurers failed to conduct a reasonable investigation because they did not consider or analyze the exception to paragraph f.(2). (Resp. at 21-22.) The evidence demonstrates that Ms. Chong, in her July 21, 2004 declination letter, quoted both versions of the pollution exclusion clauses, including the exception, and stated that the Insurers were of the opinion that "the above-referenced pollution exclusions apply to this claim and therefore there is no coverage for this claim under any policy. . . ." (Chong Decl., Ex. J.) Ms. Chong does not discuss the exclusions or the exception in depth. Even assuming the Insurers did not consider the exception, however, Seattle Collision and the Sullivans have again not demonstrated that further investigation would have yielded a different understanding or result. Although Seattle Collision and the Sullivans contend the exception operates to restore coverage, the court has rejected this argument. The court finds that Seattle Collision and the Sullivans have not shown that the Insurers failed to conduct a reasonable investigation on this ground.

In sum, viewing the evidence in the light most favorable to Seattle Collision and the Sullivans, the court grants summary judgment on the bad faith claims alleging failure to conduct a reasonable investigation.

### iii. Bad Faith Delay

"Under Washington law every insurer has a duty to act promptly, in both communication and investigation, in response to a claim or tender of defense." *St. Paul Fire and Marine Ins. Co. v. Onvia, Inc.*, 196 P.3d 664, 668 (Wash. 2008) (citing WAC

284-30-330(2)-(4), WAC 284-30-360(1) & (3), and WAC 284-30-370). "As with other bases for a claim of bad faith, however, delay does not constitute bad faith unless it is due to a frivolous and unfounded reason." *Rizzuti v. Basin Travel Serv. of Othello, Inc.*, 105 P.3d 1012, 1021 (Wash. Ct. App. 2005). Seattle Collision and the Sullivans argue that the Insurers breached their duty to act promptly when they failed to complete their investigation within the 30-day period specified by WAC 284-30-370. (Resp. at 7 n.4.) Specifically, the evidence indicates that over 30 days elapsed between Seattle Collision and the Sullivans's tender on December 8, 2007, and the Insurers' denial of coverage on February 11, 2008. (*See* Chong Decl., Exs. K-M.) The Insurers do not respond to this argument, and neither party suggests a reason for the delay. Viewing the evidence in the light most favorable to Seattle Collision and the Sullivans, a genuine issue of material fact exists as to the reason for the delay, particularly in light of the fact that the Insurers had already investigated the claims of Underlying Plaintiffs in 2004 and presumably were reasonably familiar with the issues presented by the Underlying Complaint. A rebuttable presumption of harm attaches once an insured shows that the insurer acted in bad faith. *Coventry Assoc. v. Am. States Ins. Co.*, 961 P.2d 933, 938 (Wash. 1998) ("a rebuttable presumption of harm exists as a result of an insurer's bad faith act in the third party context"); *Butler*, 823 P.2d at 504; *Werlinger*, 120 P.3d at 596. The Insurers have presented no evidence to rebut the presumption of harm. Therefore, on this record, the court denies summary judgment with respect to Seattle Collision and the Sullivans's bad faith claims predicated on delay in responding to the December 8, 2007 tender.

3.  CPA Claims

The CPA provides that "unfair or deceptive acts or practices in the conduct of any trade or commerce" are unlawful.  RCW 19.86.020.  An insured may invoke the CPA against an insurer that violates RCW Title 48 or the administrative regulatory provisions set forth at WAC 284-30-300 through 284-30-410.  *See Industrial Indem. Co. of the Nw., Inc. v. Kallevig*, 792 P.2d 520, 529 (Wash. 1990); *see* Thomas V. Harris, *Washington Insurance Law* § 8.3 (2d ed. 2006).  In the insurance context, a CPA claim requires (1) an unfair or deceptive practice, (2) in trade or commerce, (3) that affects the public interest, (4) which causes injury to the party in his or her business or property, and (5) which injury is causally linked to the unfair or deceptive act.  *Anderson v. State Farm Mut. Ins. Co.*, 2 P.3d 1029, 1033 (Wash. Ct. App. 2000).

Seattle Collision and the Sullivans do not explain the nature of their CPA claims with specificity.  In their response, Seattle Collision and the Sullivans briefly address these claims in a footnote (Resp. at 7 n.4); they subsequently filed a notice of supplemental authority to augment their CPA arguments (Dkt. # 54).  Seattle Collision and the Sullivans now contend the Insurers violated WAC 284-30-330(2) and (4), WAC 284-30-370, and WAC 284-30-930(2).

i.  *Failure to Conduct a Reasonable Investigation*

Under WAC 284-30-330(4), a CPA claim may be made out where the insurer refuses to pay claims without conducting a reasonable investigation.  As discussed above, Seattle Collision and the Sullivans have not submitted evidence sufficient to

establish that the Insurers' investigation was unreasonable or that the denial of coverage was made without reasonable justification. Therefore, the court grants summary judgment with respect to Seattle Collision and the Sullivans's CPA claim for failure to conduct a reasonable investigation under WAC 284-30-330(4).

    *ii.    Failure to Begin Investigation Within 15 Days*

Under WAC 284-30-930(2), an insurer's failure to commence investigation of an environmental claim within 15 working days after receipt of a notice of an environmental claim may give rise to a CPA claim. Although Seattle Collision and the Sullivans assert WAC 284-30-930(2) as a basis for their CPA claim, they provide no supporting factual or legal analysis. The evidence demonstrates that the Insurers commenced investigation within 15 days after receipt of both the 2004 notice and the 2007 tender of the Underlying Complaint. Therefore, on this record, the court grants summary judgment on Seattle Collision and the Sullivans's CPA claims under WAC 284-30-930(2).

    *iii.    Failure to Complete Investigation Within 30 Days*

Under WAC 284-30-370, an insurer shall complete investigation of a claim within 30 days after notification, unless such investigation cannot reasonably be completed within such time. *See also* WAC 284-30-330(2) ("Failing to acknowledge and act reasonably promptly upon communications with respect to claims arising under insurance policies."). As discussed above, the Insurers did not complete the investigation of the December 8, 2007 tender within 30 days. This is sufficient to make

ORDER - 26

out a prima facie case of the first three elements of a CPA claim. Seattle Collision and the Sullivans, however, present neither evidence nor argument in support of the final two elements, namely, whether they suffered injury to their business or property causally linked to the delay. Nonetheless, a presumption of harm arises in this context. *Coventry Assoc.*, 961 P.2d at 938. Therefore, the court denies summary judgment on Seattle Collision and the Sullivans's CPA claims under WAC 284-30-330(2) and 284-30-370.

4.  IFCA Claim

The IFCA provides a cause of action against insurers for unreasonably denying coverage. RCW 48.30.015; *Malbco Holdings, LLC v. AMCO Ins. Co.*, 546 F. Supp. 2d 1130, 1132 (E.D. Wash. 2008). Seattle Collision and the Sullivans do not address the IFCA in their briefing. As discussed above, viewing the evidence in the light most favorable to Seattle Collision and the Sullivans, reasonable minds could not differ that the Insurers reasonably denied coverage. Therefore, the court grants summary judgment in favor of the Insurers on Seattle Collision and the Sullivans's IFCA claim.

5.  Negligence Claim

Negligence and bad faith constitute separate and distinct causes of action under Washington law. *First State Ins. Co. v. Kemper Nat'l Ins. Co.*, 971 P.2d 953, 959 (Wash. Ct. App. 1999). An insurer owes a duty to exercise reasonable care with respect to the interests of its insured. Harris, *supra*, at § 7.2. "Even if an insurer acts in good faith, it will be held liable to its insured for any proximal negligence." *Id*. To establish a claim for negligence, the insured must show that the insurer was at "fault" under RCW

4.22.015.  Neither the Insurers nor Seattle Collision and the Sullivans specifically address the negligence claim in their briefing.  Viewing the evidence in the light most favorable to Seattle Collision and the Sullivans, a reasonable trier of fact could conclude that the Insurers acted negligently by not completing their investigation of the December 8, 2007 tender within 30 days as discussed above.  Therefore, the court denies summary judgment on Seattle Collision and the Sullivans's negligence claim.

6.  Estoppel to Deny Coverage, Declaratory Relief, and Damages Claims

The Insurers also request summary judgment in their favor with respect to Seattle Collision and the Sullivans's claims for estoppel to deny coverage, declaratory relief, and damages.  (Mot. at 17.)  Neither the Insurers nor Seattle Collision and the Sullivans brief these issues for consideration by the court.  Therefore, the court denies summary judgment with respect to these claims.

**D.  Motion to Strike**

The Insurers move to strike (Dkt. # 61) arguments raised for the first time by Seattle Collision and the Sullivans in their surreply (Dkt. # 60) to this court's minute order (Dkt. # 58) directing the Insurers to file complete copies of the insurance policies. The court agrees with the Insurers that Seattle Collision and the Sullivans present new arguments in their surreply.  Specifically, Seattle Collision and the Sullivans contend that coverage exists under the "Covered Autos" provisions of the insurance policies. (Surreply (Dkt. # 60) at 3-5.)  The court grants the motion to strike and declines to consider these arguments because Seattle Collision and the Sullivans raised them for the

first time in their surreply despite a full opportunity to brief the issues.  *See Smith v. Marsh*, 194 F.3d 1045, 1052 (9th Cir. 1999) ("arguments not raised by a party in its opening brief are deemed waived"); *United States ex rel. Giles v. Sardie*, 191 F. Supp. 2d 1117, 1127 (C.D. Cal. 2000) ("It is improper for a moving party to introduce new facts or different legal arguments in the reply brief than those presented in the moving papers.").

## III.    CONCLUSION

For the foregoing reasons, the court GRANTS in part and DENIES in part the Insurers' motion for summary judgment (Dkt. # 33).

Dated this 18th day of September, 2009.

JAMES L. ROBART
United States District Judge